Good morning, Your Honors. My name is Russell Brooks. I'm counsel for the appellants in this matter, the Hales. I'd like to reserve five minutes, please, for rebuttal. The Hales own private property inside the Wrangell-St. Elias National Park. After their home burned down, the Park Service denied them adequate and feasible access via the only road available to them for access. Well, at the time this lawsuit was brought, they hadn't done that. Is that right? The permitting process hadn't even been begun. The Park Service informed the Hales that they could not use the tracked vehicle to access their property. They informed them they needed a permit. Exactly. They informed them they needed a permit, and until they obtained that permit based on an EPA analysis, they could not access their property with the tracked vehicle. And was the Park Service unreasonable in the timeline it laid out in terms of how fast they would process a permit application? Your Honor, the Park Service was unreasonable, and that's one reason that adequate and feasible access was denied. And between the time the Park Service offered to begin the permitting process upon application by the Hales, and the time the Hales said, wait a minute, we need to get in on an emergency basis, how much time elapsed? The Hales first applied for the permit in July. Did they apply for the permit? I mean, formally applied for a permit. Well, they informed the Park Service that they needed emergency access to rebuild their home. At some point after that, I believe it was August, the Park Service informed them that they would have to apply for a permit and that the Park Service would have to perform a NEPA analysis. Now, a NEPA analysis in itself, aside from not being required under ANILCA and, in fact, being prevented under ANILCA, just the process itself violates the mandate to provide adequate and feasible access because normally the process takes many months. And how long did the Park Service say it would take them once the Hales had formally instituted the application process for a permit? In October, the Park Service informed the Hales that it thought it could do a NEPA analysis within nine weeks. It actually took a bit longer before a permit was actually issued. But this was in late September, early October, right around in there. 2003? Yes, Your Honor. Thank you. And that in itself was not adequate and feasible because the Hales, in this case, needed to access their property prior to the dead of winter setting in. Can I stop you there? We know the facts. I'm really confused by something you said. You said that ANILCA does not apply. Now, reading the district judge's decision, and he made quite an extensive legislative review about Senator Stevens, Senator Jackson, and the conclusion that even though Stevens indicated that the existing rights should not be impacted, that as I read that, at least what the decision of the judge was, that they would be subject, those existing rights are still going to be there. ANILCA would put reasonable restrictions on those. And that was his interpretation. Now, let's stop there just a second. Let's assume that the judge said ANILCA does not apply to your existing rights. Then your injunction should have issued, right? Well, our argument was that ANILCA... No, that's the question. If ANILCA doesn't apply and you have existing rights under the law for access, and if ANILCA doesn't apply, you should have got the injunction. Yes, Your Honor. Okay. The judge decided ANILCA does apply. He also decided that because there was no final agency action, we have no jurisdiction. So we have to decide initially, don't we, whether or not ANILCA applies. Yes, Your Honor. And ANILCA does apply. Now, you tell me why it doesn't apply. Why it does not apply? Where did the judge make the legal decision, the wrong decision, when he said ANILCA applied? Because if it does, you said, then we go forward with the agency review, and then there's no final agency action. That's another issue. But you tell me why ANILCA does not apply in this case and what the error was by Judge Bieslein when he made his decision. Well, first I would have to say that ANILCA does apply. But even if it didn't apply, this is an RS-2477 right-of-way, and therefore, still, there's no discretion to deny access. No, no. You've lost me again because I wrote it down. ANILCA does not apply when you argue. If ANILCA applies according to the judge's decision, then reasonable conditions can be put on those rights.  Well, Your Honor, perhaps I misspoke earlier. ANILCA does apply. NEPA does not apply. The National Environmental Policy Act. ANILCA applies. That's our whole argument. And because it applies, the Park Service has no discretion to deny adequate and feasible access. However, NEPA does not apply to this process. Section 1110B of ANILCA begins, notwithstanding any other law. And that includes NEPA. Notwithstanding any other law, the Park Service must grant adequate and feasible access. That's where the district court erred. It erred on three counts. One, it didn't apply proper emphasis to the fact that ANILCA does indeed apply here. Secondly, it determined that even if ANILCA does apply, if the Park Service believes that a NEPA analysis is warranted, then it should be allowed to do one, notwithstanding ANILCA. Well, that's not what Congress said, notwithstanding ANILCA. It actually said notwithstanding any other law. That includes NEPA. And then finally, the court ruled that the McCarthy-Greenview Road didn't know if it was an RS-2477 right-of-way or not. And even if it was, perhaps it was abandoned. Well, that's not the law. And the district court erred. Now, your construction of that notwithstanding any other provision of law in ANILCA, how broad does that go? All other laws are wiped off the books and ANILCA says that we care about no other law, period? Well, I think it goes as far as Congress allowed it to go to the extent that Congress limited it. And clearly, Congress didn't limit it. It said notwithstanding any other law. What about the legislative history, the dialogue that the judge recited in his decision between Stevens and Jackson? Well, that's part of the district court's problem with its ANILCA analysis. The district court cited a provision of ANILCA dealing with temporary access. It didn't rely on the proper provision of ANILCA that applies to this case, Section 1110B, that deals with private in-holders. Now, NEPA, of course, is not a substantive statute. NEPA does not of its own force provide any limitation on access to in-holders. It's merely a procedural statute that lays out the process by which, if NEPA applies, the effects of something will be studied. And once they're properly studied, NEPA has nothing further to say about it. Are you saying that the Park Service cannot study the possible consequences of a permit if the permit were to be applied? So when somebody applies for a permit, the Park Service is not allowed to figure out, okay, what are going to be the consequences if we grant the permit? Your Honor, I'm saying here that to the extent the Park Service can require a permit, it is only a ministerial decision because they cannot deny access. That implicates their decision to go forward with NEPA. But what do you mean they can't deny access? Can they impose conditions with respect to a permit? Or do you mean anytime somebody says, I want a permit and I want it on these terms, the Park Service has to roll over and say, here it is? The Park Service, in its ministerial permit, can do certain things and engage in certain types of regulation. For instance, for example, they can provide advice and consultation as to how the access should take place. Advice and consultation, similar to what took place in the Marbled Murillette case, v. Babbitt. But you're saying, I may be jumping ahead, but you say advice and consultation. Do you mean they cannot, as a matter of, we the Park Service say you cannot do X? You're saying they can't do that? They cannot. Can the Park Service say to the Hales or someone else in their situation, you want access of, and I'm not making up the number, six times a month, and you want it all year long and you want it with bulldozers going anywhere you want. You don't need to stick to the road. Wherever you want to go, you can go. That's what the Hales want. You're saying that the Park Service can't say, well, you have to stick to the old road? No, Your Honor. They can't say that. In other words, the Park Service has the power beyond advice and consultation. They have the power to say, you have the permit subject to X or Y or whatever it is, so long as it's consistent with the reasonable access provision. To a certain extent. As you noted, the first type of thing they might do is advice and consultation. Secondly, they can ensure that the use of the road, the access, is within the scope of which it's been used for decades. And I think that's what you're referring to. And that's similar to what took place in the Sierra Club. Once we're there, I'm asking you, what investigation can the Park Service do in terms of the adverse environmental consequences or whatever other adverse consequences the Park Service thinks might happen, might exist? What investigation can the Park Service do before it decides what conditions it will impose upon the granting of the permit? That's the third example that I was just fixing to provide, Your Honor. They can ensure that compliance with the regulations, with any applicable statutes, dealing with the park and that kind of thing, in order to ensure that the park resources are not degraded. Now, that's very similar to the Sierra Club v. Penfold case. But none of these three examples require a NEPA analysis. This is just advice and consultation, reasonable type regulations that aren't required under NEPA. And in fact, in doing that, they still cannot deny access. Let's assume NEPA doesn't exist. There's not even a statute out there to which the Park Service could be referring. But let's assume that the Park Service, when it gets a permit application, says, well, before we grant this, we need to study the consequences. And let's assume that the study of the consequences that the Park Service sets up through its own regulation pursuant to this statute, pursuant to ANELCA, track NEPA. Is the Park Service forbidden to set up regulations that will guide the way in which it will study the environmental consequences? To the extent that the Park Service would do that, similar to the way it applied in NEPA in this case, then no, they couldn't do that because it would violate the mandate to provide adequate and feasible access. Why would that? I'm just hypothesizing regulations setting up a procedure by which they study what's reasonable. But you're saying setting up a procedure by which they study what's reasonable is in itself unreasonable. Not necessarily in and of itself. And if they can do that in a way that still provides adequate and feasible access, then they could do that. But here, they haven't done that. They've studied the environmental impact, if any would occur, and just by the facts of this case, it demonstrates that there's no adequate and feasible access provided here. Therefore, that violates ANELCA. Yeah, but you've got a little bit of a cart before the horse problem here because at the stage at which you began this process, you didn't know what the permit was going to say. Well, we knew that the Park Service took the strong position, which it has always maintained, that it must first do a NEPA analysis prior to granting or denying a permit. That in and of itself demonstrates that their actions, the process, the whole permitting process violates ANELCA. Well, as I understand your position, you don't believe that in spite of ANELCA, that a permit is needed for your ingress and egress based upon your basic rights as an inholder. I mean, you're just disputing the fact that you need a permit at all. To the extent a permit is required or is needed, it can only be ministerial. Now, we recognize that that may be— I don't know what that means. It's a permit or it's not a permit. They either can permit you and put restrictions or it doesn't mean anything. What is the ministerial? Let's put it this way. Is your position that there can be no permit and no conditions on your ingress and egress to your property? Not under any circumstances, no. There can be reasonable regulations. In other words, the answer is no because if they decide to somehow restrict you with a permit, then there would be some legal action, in fact. Not as long as any regulations are reasonable, such as ANELCA provides, subject to reasonable regulation. So what's wrong with the regulations that they provided in their March 12, 2004 permit, and did you appeal that issuance of that permit, or have you done anything about that permit that was issued to you? The problem with that permit and those restrictions is they simply are not reasonable. All right. Did you appeal that permit? Did you make any appeal of that? What's happened to that permit? That permit and any appeal of it is not a part of this case, Your Honor. We're simply challenging the process, not the permit, the process, the process by which the Park Service has to go through a NEPA analysis. You mean the process in which to arrive at a reasonable condition on your ingress and egress? It's our position that any NEPA analysis in connection with this permit is on its face not reasonable, and I think that plays out by the facts in this case. Clearly, this is not adequate and feasible action. All right. If we don't use NEPA, how are we to determine what's reasonable or not, or what basis then does the Park Service has to put any conditions on your ingress and egress? Well, Your Honor, I think the three examples I just gave, based on those three cases, shows how that can take place. There was advice and consultation. There was insurance that the use of the right-of-way, the road, what have you, would not cause any kind of undue degradation, and none of those actions required an environmental assessment, an environmental impact statement. Indeed, this court said that what was going on was not a major federal action. Therefore, NEPA was not required. It's the same thing here. There's no major federal action because there's no discretion to deny the permit. Reasonable regulations can be imposed through advice and consultation, ensuring the use is within the scope, ensuring there's no undue degradation. But as far as engaging in a nine-month or a nine-week NEPA analysis, particularly under the facts of this case, that's unreasonable regulation. Can I ask you a side question? On that permit that was issued on March 12th, it indicated that you could make nine round trips by bulldozer, a similar vehicle, within a period of one year between McCarthy and the property. Is that a perpetual permit or just for one year? In other words, did it go from 2004 to 2005, or is it a perpetual permit? That was just that time period, Your Honor. So it's gone anyways? It's over? Yes, Your Honor. The Hales would have to reapply for a permit. Did they, in fact, take advantage of that permit? Did they go in and out by bulldozer during that period? No, Your Honor. They were unable. It was unsafe. It was dangerous. The only access allowed— At no time during that year was it possible to go in and out with a bulldozer pursuant to the permit? Not during the time period of the permit, October through April. And still provide the type of access they needed for their purposes. So the short answer is they never made any trips with bulldozer pursuant to the permit actually granted? That's my understanding, Your Honor, yes. Okay. You needed to save some—wanted to save some time. We're down to about three minutes. Please. Thank you. Good morning. May it please the Court. Matthew Sanders for the United States. Sitting with me at counsel's table is Rebecca Bernard, who represents the interveners in this case. We've agreed to split our time today with me speaking for about 15 or 16 minutes. Are we here to determine on this jurisdiction question whether or not ANILCA applies? And if it does, whether or not it, as counsel has argued, does not put any restrictions on their right of ingress and egress as inholders? Well, I think as we just heard counsel concede, ANILCA does apply. And because of that, the Apartheid Service has the authority to require the Hales to obtain an access permit to access their property in a Rangel St. Elias National Park. Okay. That's the issue that he disputes. Now, would you tell us how and what authority you're making that statement? What provision of the law? Because apparently that's the issue that the district judge had to decide in order to decide the jurisdiction. That's correct. In their complaint, the Hales challenged the Park Service authority to require a permit at all. On appeal, the Hales have narrowed that argument down to focus on the NEPA review issue. However, because the district court had the complaint before it, the issue that it decided was whether the Park Service had the authority to require a permit. And it clearly held that it did. Under ANILCA section 16 U.S.C. 3170B, the Park Service clearly has the authority to require a permit. Excuse me. That section expressly provides that the Secretary of the Interior is vested with the discretion to determine what constitutes adequate and feasible access and to impose reasonable conditions on that access. Now, counsel says 11.10B applies. That's correct. ANILCA section 1110B, 16 U.S.C. 3170B. Same section. In addition, in United States v. Vogler, this court held that the Park Service has the authority to reasonably regulate access through national parks, even if a valid RS-2477 right-of-way exists. The district court reached the clear conclusion under controlling authority that the Park Service has the authority to require the Hales to obtain an access permit and to impose reasonable conditions on that access permit. Because the Hales now concede that the Park Service can require a permit, even if that process were ministerial, which it is not, even if it were ministerial, however, the Park Service had the ability and, in fact, the duty to require the Hales to obtain an access permit, and the Hales were obligated to wait until the Park Service made a decision on their permit application before filing suit. However, because the Hales filed suit prior to there being a decision on their access permit application, there was no final agency action under the Administrative Procedure Act. What if your position is wrong? How do they ever determine whether or not a permit is really required? Because if they don't file before you issue the permit, they've got to go through the whole process. By the time the process is issued, their right period ended, and they were required to get the permit, and then what would they do then? Appeal that, and the process goes where they're never able to exercise their rights. In other words, the delay process, the seasons and whatever, seems to be a circular thing. If they brought the action for declaratory parole, really, and if we can't determine right up front at that moment whether or not there's jurisdiction, they couldn't get their injunction, so they had to wait the whole process. By the time it was over, the permit was useless. But the HALES could apply for permanent access, but they did not do so in this case. If you look at excerpts of record page 28, which is part of their permit application, they clearly indicated that they were applying for temporary access and that they were waiting to submit a permanent access application until later. If you look at the complaint and at their access application, it's very clear that they were applying for temporary access during the winter of 2003-04. Did they get that temporary access? Did they? Well, what happened was they waited to submit a formal application for access until fall of 2003, September 2003. The Park Service replied immediately and said, we need additional information from you about what kind of access you're talking about. For example, the weight of the vehicle, the number of trips, whether they would be towing a trailer, information like that. The HALES did not submit that information until December 16, 2003, the day after the district court denied their motion for reconsideration. At that point, the Park Service then prepared an EA, executed a finding of no significant impact under NEPA, and issued a temporary access permit or tendered a temporary access permit on March 12, 2004, about a 12-week period. So the Park Service responded very quickly once the HALES provided all the information that the Park Service needed to process the application. I'm sorry. Just one question. So you're saying if they had applied the information in September, things might have gone differently? Well, if they had not injected repeated delays into the permitting process, then indeed things would have gone differently. The Park Service was very, very responsive to the HALES request for access and indicated throughout the fall of 2003 that they would process their application for access within nine weeks, despite having nine months to do so under the regulations, and make a decision on their permit application. However, the HALES continually repeated, continually delayed providing the information to the Park Service. So, yes, we would submit that things would have gone differently had the HALES provided the information in a timely manner. So they can't judicially determine up front whether or not they actually have to get a permit? I'm sorry. Could you repeat the question? They cannot judicially up front get a determination from the court whether they have to get a permit. Once you said they had to get a permit, they can't challenge that judicially. Did they ever challenge that before, or just come in and ask for a temporary permit? Well, I think what has to happen is they have to wait for a final agency action under the Administrative Procedure Act. What if they think there shouldn't be any agency action at all under their rights? Well, then that is subject to judicial review. But I think that under the APA, in order to get review of a legal argument about whether NEPA, in fact, applies, I think they have to allege some concrete injury related to NEPA review and then wait for final agency action to issue. Of course, in this case, the HALES did not do so. They filed a suit before the Park Service had the opportunity to issue a decision on their access permit application. Let me ask you this. The permit was issued, and then you corrected yourself to say tendered in March. And how long from the date of the Park Service's decision to issue the permit, how long was it valid? It was valid for one year from the date of signing, but it also had a provision in it that held that it would expire in, I believe, April of 2005. So it has expired. Okay. And I understand this is, at least I think this is outside the record and may not be entirely relevant to the decision in front of us. As you understand the facts, did the HALES ever, during the one-year period beginning in March 2003, use a bulldozer pursuant to what the permit would have allowed? My understanding is that they did not. They did not sign the permit. They refused to sign the permit. But it was a year's permit. Correct. And if the representation I just heard is correct, I just heard that it was too dangerous during the entire year to use that permit. That may not have been what you meant to say. I heard the same thing, and, of course, we would dispute that. In their complaint, the HALES – But it's too dangerous during the entire year, it's too dangerous to do what they said they wanted to do, which is to go in and out by bulldozer. So I doubt that's what he meant to say. That's right. He's perfectly capable of clarifying that when he gets back up on the road. But let me ask you a different question, and that is – Sure. This is to follow up on Judge Brunetti's series of questions. Does the court have jurisdiction to determine whether or not the agency, here the Park Service, has permitting authority at all? Well, I think – I don't know. Well, I think the district court, of course, went on to determine whether the Park Service had permitting authority. I think the district court assumed that the Park Service did have permitting authority. Right. And then held that, given that it did, and given that there was no final agency action, it didn't have jurisdiction. Right. But I'm asking the question there at the first step. Did the district court – and do we have authority to determine, as it were – do we have jurisdiction to determine our jurisdiction? Do we have jurisdiction to determine whether or not a permit is properly required under the statutory system? I think the court does. I think that the court does need to determine whether, in fact, the Park Service has the authority to require a permit under ANILCA. And to subject – it doesn't need to go on to then determine whether the Park Service has the authority to subject that permit to NEPA review. But I think it's – You say it does not? Why not? Well – Why isn't that part of the question presented, given that the Park Service appears to be saying that, yes, we have the authority, yes, you must submit to our permitting process, and our permitting process includes NEPA. Why can't the district – why is that not within the district court's authority? It may be part and parcel. Whether that's properly part of the permitting process. It may be part and parcel, but the issue on appeal is whether the district court properly dismissed the Hales complaint for lack of jurisdiction because there was no final agency action. Well, I understand that, but I think there's a prior question, and that is jurisdiction to determine jurisdiction. And I think you told me that the district court had jurisdiction to determine then whether the permitting process could properly – That's right. That's right. And it seems to me the NEPA is part of that question now. It may well be. Again, the Hales on appeal are conceding that the Park Service has the authority to require a permit, even if that permitting process were ministerial. Oh, wait, wait. Stop this. Okay. Sure. I might have – I'm misunderstanding, or I'm in the wrong room. They admitted what on appeal? I think the Park Service – excuse me. The Hales have conceded that the Park Service has the authority to require them to obtain an access permit. That's not what I heard from counsel. Well, I think that the Hales are suggesting or arguing that that permitting process is ministerial. That is – Either way. But you're saying – and this is following up because Judge Fletcher and I are on the same track here. It goes back to day one. Day one, they filed for an injunction. I asked counsel, if the injunction lays, you can't require them to get a permit. And that requires us to determine whether ANILCA and the legislative history reviewed by the district judge imposes a condition upon his existing rights. And until you determine that, you can't go forward. So it seems to me we either have jurisdiction or we don't have jurisdiction to determine that issue. If we determine that the district judge was wrong, is this interpretation of the effect of ANILCA on the existing rights, and we decide that there is no ANILCA imposition upon his rights, then we issue the injunction, don't we? Or are we reverse indicating that the injunction should be issued? Well, I think – but I think that would be still – I think that would still be predicated upon a finding that the Hales have existing rights of access. Oh, well, that's – so you're saying that there is also a sub-issue as to whether this existing old trail, this existing old road, has any rights left that they're entitled to take advantage of? That's right. The Hales assume that there is an existing valid right-of-way under RS-2477 over this old road. Did the district judge make findings of facts on that? The district court reached the conclusion that that issue was in dispute, and it still is in dispute. That issue would require further factual proceedings in the district court. In addition, the Hales cannot bring a Quiet Title Act claim under RS-2477 because they are not the party who is the potential property interest holder. That's the county or the state. Under Kinsherff and Suha, the Tenth Circuit cases, the Hales cannot bring that action. But that issue is in dispute. That is, it's not clear that there is an existing RS-2477 right-of-way. That's why I ask because I just this moment, a few minutes ago, reviewed that because I was getting that question. How do we handle that in our initial jurisdiction to determine jurisdictional analysis? Do we have to determine that they actually have any rights left in that road? I don't think the court does because, again, we would submit that it's clear from ANILCA that the Park Service has the authority to require a permit and to impose reasonable conditions on that permit. And if that's the case, then the Hales were required to wait for a decision on their permit application before filing suit. And the district court reached that same conclusion. Again, there was no final agency action, and the Hales suit was untimely. They had to wait for a final agency action. Let me ask you this. By regulation, the Park Service has set up that upon application for a permit, it will go through a NEPA analysis where it thinks a NEPA analysis, in accordance with what the NEPA statute says, would be required. Is it your view, there are two possibilities that I can see here. Either the Park Service decided that the NEPA process was a good idea and decided to implement it as part of its process of implementing ANILCA, or it decided that NEPA's own terms required that NEPA be applied. Do we need to decide which of those two things is true? Well, as we heard in our response brief, both are true. I know, but do we need to decide which of those two things is true? Would it be enough for you to prevail in this case that the Park Service decided on its own motion that NEPA would be a good idea to follow? Yes. That is all the court would have to decide. It would not need to then go on to decide that NEPA applies by its own terms. But your argument is that it does. Yes, it does, yes. Yet through the regulations found at 43 CFR Part 36, the Department of the Interior has determined that the best way to determine what reasonable regulations should be implemented in an access permit to protect park resources is to do NEPA review. Do we have any indication from any responsible agency other than the Park Service of the applicability of NEPA to ANILCA? Well, I'm trying to decide whether there's Chevron deference required as to the determination that NEPA is required to be applied rather than permitted to be applied. Well, I think the other side of that would be that NEPA applies by its own terms. And I'm asking, do we have an agency having decided that NEPA applies in its own terms? Is there Chevron deference to some determination that NEPA applies by its own terms? I think there would be. The specific section is 43 CFR 36.6. And in that section, the Park Service has held or has provided that these determinations are to undergo NEPA review. And I think that there is some deference owed to those regulations. Is CEQs weighted on this question? I don't know that it's weighed in specifically on this question. But if you look at 40 CFR 1508.18, federal activities that are permitted activities are considered to be major federal actions under NEPA. I'd like to see the rest of my time. Excuse me a second. The council indicated that this type of permit does not require NEPA action. So you've joined the issue. That means that if we go with your position, we're going to be the first court to decide this issue, that NEPA applies under these circumstances, under these kind of permits for this ingress and egress. I don't hear you citing any cases. So apparently we're going to make a decision of first impression relative to the application of NEPA to this kind of a permit. Well, I think that this case is on all fours with United States v. Vogler. And, of course, that case did not involve NEPA. But I think you asked my question. If we're going to apply NEPA as you want us to, it's going to be a case of first impression. Well, I think it may be in a sense that the court can say the Park Service has the authority to determine the best way to protect the resources of the park for reasonable regulation. And that may be through NEPA. But I don't know that the court needs to go further than that. I'd like to see the rest of my time from Ms. Bernard. Thank you. Good morning, Your Honors. Rebecca Bernard for Appellee Intervenors. And I'd just like to go right to the point that you were questioning about earlier. And that is that I think the only issue before this court for decision this morning is whether the district court made the proper prerequisite binding to its determination that it lacked jurisdiction. And that was, does the National Park Service have the authority to regulate access across park lands and to require a permit across park lands? And that decision, of course, was based on this court's squarely on-point precedent in the U.S. v. Vogler case, as well as on the plain language of ANILCA Section 1110B, which is codified at 3170B. So I would say that in order for this court to reverse the decision of the district court, it has to come face-to-face with that precedent in the Vogler decision and reach a different conclusion than this court has reached in the past. What about the fact, I understand that Vogler is, if not on all fours, we've got three and a half. What if, what about the difference between Vogler in this case in that the Park Service in this case has made it very clear that it believes that a NEPA analysis is part of the permitting process and that was not part of Judge Canby's opinion in Vogler? That's true. The Vogler case did not address NEPA. However, once it's established that the Park Service can regulate access, then there has to be some sort of process. As Janice was indicating earlier, there has to be some sort of process for the Park Service to determine what is reasonable regulation and what is feasible and adequate. Well, is it premature for us to decide whether the process actually followed is the proper one or is that only to be determined after the permit has been issued or not issued and there's a challenge to the final agency action with respect to the permit? I think that's a question that has to be determined after there's been a final agency decision. Even the question as to whether NEPA is applicable as part of the review process, that has to wait? Until there's a final agency decision, the court simply doesn't have jurisdiction under the APA and that is the basis for the first jurisdiction. Do we not even have jurisdiction to determine whether NEPA is applicable as part of the permitting process? I think that's right. I think that in order for the HALES to get a decision on whether NEPA is properly applied, they have to challenge the final agency decision, which was the permit, and the NEPA decision. Until the agency has done the NEPA process, there's no final agency action. But you're assuming that ANILCA applies and that ANILCA requires a NEPA action. What if you're legally wrong on that? When do they question that? You have to go through the whole process to question whether you should be there in the first place. Why can't they bring an action for declaratory relief and injunction as they did and determine that issue up front so that we can stop all this before it gets started if it's not required? Your Honor, there are cases which we have cited in our brief that do hold that in order to challenge the applicability of NEPA, a party does need to wait for the NEPA process to be completed. It's a ripeness decision. I mean, to challenge the NEPA applicability, you've got to have a final agency action to challenge. So I'm not sure that it is possible to bring a declaratory judgment action. I'm not sure you can split the process apart from the outcome the way the HALES are seeking to do. So I guess my point is simply that the decision for this Court was Vogler correct and was the district court correct in following Vogler and determining it had no jurisdiction. Thank you very much. Thank you. Mr. Brooks, I think you've got about three minutes. First of all, Your Honors are exactly right. In order to rule that NEPA applies to this case under these circumstances, not only would it be a matter of first impression, but in essence you would be overruling two prior decisions of this Court simply by implication, that being the marbled murrelet v. Babbitt case and the Sierra Club v. Penfold case, both of which dealt with the federal agency's ability to establish some sort of reasonable regulation to evaluate what a private party is doing, and that federal action not rising to the level of a major federal action implicating NEPA. Secondly, we're being painted in a wrong light here. We are not arguing that the Park Service has no ability to impose any restrictions. Clearly, Section 1110B of ANILCA says that the agency can impose reasonable regulations. We don't dispute that in the least. But you think it's an unreasonable regulation that they're going to follow the NEPA process? We do think on its face, which also addresses the jurisdictional issue, that applying NEPA, given Section 1110B of ANILCA, violates the mandate to provide adequate and feasible access, certainly under the facts of this case, but also under the facts of this case. As I understand them, aren't all that favorable to your clients? That is to say, your clients really obstructed it every step of the way. They didn't want to go through the process. What they wanted to do was challenge from the very beginning. If what they had really sought was meaningful access so they could get in there and rebuild their house, they didn't go about that. What they went about was setting up a test case. Your Honor, respectfully, I actually think the opposite is true. They have been painted as bad people. But that's simply not the case. They have tried to comply with the Park Service in getting... Let me ask you, because there was some uncertainty back and forth as to what your answer meant. After the permit was, and I'm not quite sure whether the right word is issued or tendered in March, I gather that permit was valid for a year. Is that correct? That's kind of tricky in itself, Your Honor. Yes, it was valid for a year, but the access allowed was allowed only October through April in the winter. So it was virtually useless. Well, it was useless until you get to October, I guess. And then your contention is it's too dangerous to go between October and April? Exactly, Your Honor. Is there anything on the record that we have that supports that? Of the declaration of Robert Hale, Your Honor, that was provided in our motion or opposition to their motion to dismiss, he testifies in there that it's simply too dangerous. There's ice on the road. There's slopes, inclines. The road is glaciated. You can't use a tracked vehicle under those kinds of circumstances. It's simply too dangerous. That's why they wanted access in the summer to begin with. I see my time is up, Your Honor. We would respectfully ask that you reverse the district court's decision. Thank you. I thank both sides for their argument in Hale v. Norton. That case is now submitted for decision.
judges: Goodwin, Brunetti, W. Fletcher